UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————X
                            :

COPRAGRI S.A.,               :

                :      20 CV 5486

      *Petitioner,*     :

                :

    v.             :

                :

AGRIBUSINESS UNITED DMCC,  :     July 16, 2020

                :

                :

      *Respondent.*    :
——————————————————————X

## MEMORANDUM OF LAW IN SUPPORT OF
## PETITION TO VACATE ARBITRATION AWARD

Petitioner, Copragri S.A. ("Copragri" or "Petitioner"), by its attorneys, Lennon, Murphy & Phillips, LLC, respectfully submits this Memorandum of Law in support of its Petition, pursuant to 9 U.S.C. §§ 10 and 12, to vacate the Final Arbitration Award issued in favor of the Respondent, Agribusiness United DMCC ("Agribusiness" or "Respondent") issued June 15, 2020.

## PRELIMINARY STATEMENT

The Final Arbitration Award ("Award"), a true and correct copy of which is attached as Exhibit "1", must be vacated because *inter alia* Copragri never agreed to arbitration in New York under Society of Maritime Arbitrators, Inc. ("SMA") rules, nor did it agree to the application of U.S. Law, under circumstances where the governing contracts provided for a one-year time bar (Agribusiness's claim came more than five years late) and that all disputes were subject to the Grain and Feed Trade Association ("GAFTA") arbitration rules under English Law. [1]

Petitioner is keenly aware that in typical vacatur cases, courts give much deference to arbitrators and their awards. This is not the case here, however, as reviewing courts *do not* extend

---

[1] Exhibits are attached to the supporting Declaration of Patrick F. Lennon.

such deference where arbitrators have either ignored and/or erred on the threshold issue of arbitrability.  Truly, this case is altogether different from those more common vacatur motions given particularly that Agribusiness had no justification in fact or law to commence SMA arbitration, under U.S. Law, on a time-barred claim in New York; and the arbitrators patently exceeded their authority and/or acted in manifest disregard of the law by not addressing Copragri's five written objections on the basis that GAFTA arbitration applied, not SMA.  To be crystal clear, Copragri never agreed to SMA arbitration under U.S. Law—and because the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, the arbitrators had no authority to make any rulings whatsoever.

To make matters worse, the panel totally ignored Copragri's numerous and repeated written objections in respect of the formation of the arbitration panel (ultimately Agribusiness selected two arbitrators, who in turn selected the third) and the SMA proceeding as a whole.  To wit, the panel knew that they lacked jurisdiction (astoundingly, the final award made no mention of the parties' governing sales contracts nos. AUD 715 and AUD 716) but the Panel proceeded nevertheless.  Further, the panel failed to even once mention Copragri's repeated written objections about arbitrability, nor did the panel even identify that an arbitrability issue existed (or had been repeatedly raised by Copragri), in its cursory three-page award of $208,300.00 against Copragri plus interest and fees.

Accordingly, this Court should vacate the Final Award on two alternative bases.  Firstly, the SMA arbitrators who applied U.S. Law exceeded their authority within the meaning of 9 U.S.C. § 10(a)(4) because they lacked authority *ab initio* where their actions were in direct contravention of the parties' binding sales contracts that required all disputes to be decided in GAFTA arbitration under English Law.  As discussed more fully below, both the Supreme Court and the Second Circuit Court of Appeals are consistent that the inquiry of whether an arbitrator has exceeded his

powers focuses on whether the arbitrator had the power, based on the arbitration agreement, to reach a certain issue.  Here, the SMA panel had no authority to act given that the parties' contract expressly called for GAFTA arbitration.  Secondly, as will be demonstrated below, the Court should vacate on the basis that the panel has acted in manifest disregard of the law.  This standard is less-commonly applied but is uniquely appropriate in this case because the panel repeatedly, and without justification or excuse, refused to even acknowledge the issue of arbitrability that Copragri raised time after time in several written objections.  Put differently, it is not that the panel's analysis on arbitrability was wrong, and it is not that the panel erroneously misapplied some legal doctrine, rather it is that the panel's analysis on gateway issue of arbitrability was willfully nonexistent.  That is, the panel manifestly disregarded Copragri's repeated jurisdictional objections altogether, as though they had never been raised, and in so doing manifestly disregarded the law concerning whether the panel had the power to conduct the arbitration in the first place.  For these reasons, the arbitration award should be vacated.

## **FACTS**

Petitioner Copragri is a buyer of feed and grain and is a citizen of Morocco with a principal place of business at Bd Moulay Ismail Km 6.3 Route de Rabat Ain Sebaa, Casablanca, Morocco.

Respondent Agribusiness is a seller of feed and grain and is a citizen of the United Arab Emirates with a principal place of business at Unit No. 2601, Saba 1, Plot No E3, Jumeirah Lakes Towers, Dubai, PO Box 41011, United Arab Emirates.

On August 5, 2013, Agribusiness as seller, and Copragri as buyer, entered into two substantially similar purchase and sales contracts for grain on Agribusiness' form.  The first was contract No. AUD 715 and was for the sale of 4,000 to 6,000 metric tons, 10% more or less, of "Golden Distillers Dried Grains with Solubles (Golden DDGS)" at a price of USD $353.50 per metric ton.  *See Contract AUD 715 attached as Ex. 2.*   The second was contract No. AUD 716

and was for the sale of 1,500 to 2,500 metric tons 10% more or less of "Light Corn Gluten Feed Pellets (Light CGFP)" at a price of USD $245.00 per metric ton.  *See Contract AUD 716 attached as Ex. 3.*  The parties' contracts AUD 715 and AUD 716 will be hereinafter referred to collectively as "the sales contracts".

    As the sales contracts were Cost and Freight ("CFR") terms, Agribusiness as seller was required to arrange for the carriage of goods by sea to a port of destination and provide Copragri as buyer with the documents necessary to obtain them from the carrier.  More specifically, the sales contracts provided: "Cost and freight (CFR) Jorf Lasfar Port, Morocco.  Buyer to guarantee access 1 safe berth, 1 safe port with at least 9.75 meters SWAD AAAA and LOA 200 meters."

    Page 3 of the sales contracts contained the GAFA arbitration provision that is the basis of Copragri's vacatur motion.  It provided as follows:

**GOVERNING CONTRACT:**  ALL TERMS AND CONDITIONS NOT IN CONTRADICTION WITH THE ABOVE AS PER GAFTA [THE GRAIN AND FEED TRADE ASSOCIATION, LONDON, ENGLAND] 100.  ARBITRATION AS PER GAFTA 125, AS FAR AS APPLICABLE.  THIS CONTRACT IS GOVERNED BY ENGLISH LAW.  OTHER CONDITIONS…

    WE THANK YOU FOR THIS BUSINESS AND KINDLY ASK YOU TO PROMPTLY SIGN AND RETURN A COPY OF THIS CONFIRMATION.  HOWEVER, THE VALIDITY OF THIS CONTRACT SHALL NOT BE AFFECTED BY THE NON-RETURN OF A SIGNED COPY.

Copies of the GAFTA Form 100 "Contract for Shipment of Feedingstuffs" and GAFTA Form 125 "Arbitration Rules", which were incorporated by reference in the sales contracts, are attached.  *See GAFTA 100 attached as Ex. 4 and GAFTA 125 attached as Ex. 5.*  Under GAFTA arbitration rules, Agribusiness was required to commence arbitration "not later than one year

after…the date of completion of final discharge of the ship at port of destination." Thus, any claim by Agribusiness was time barred almost six years ago, as discharge is alleged to have been completed on October 8, 2013.

As alleged by Agribusiness, it voyage chartered the M/V VITOSHA (the "Vessel") from its owner Vitosha Maritime, Ltd. ("Vitosha Maritime") for the ocean carriage of the Golden DDGS and Light CGFP cargoes from Darrow, Louisiana, to Jorf Lasfar, Morocco, and the Vessel's master issued bills of lading for the cargoes listing Agribusiness as the "Shipper". Copragri, as buyer/receiver of the grain cargoes, and whose only contracts were with Agribusiness as seller of the grain cargoes, *i.e.* the sales contracts, was not a party to the charter party and was not a party to the bills of lading, which Agribusiness has alleged called for SMA arbitration in New York. As the sales terms were CFR, Copragri was not a party to any transportation contracts. Importantly, the only contracts between Copragri and Agribusiness are the sales contracts AUD 715 and AUD 716 dated August 5, 2013 that provide for a one-year statute of limitations, and provide for GAFTA arbitration under English Law.

Reportedly, vessel owner Vitosha Maritime presented a demurrage claim against Agribusiness for vessel delays at the discharge port of Jorf Lasfar between September 17, 2013 and October 8, 2013. Thereafter, on November 7, 2013 Agribusiness presented what appeared to be an indemnity claim or contingent indemnity claim to Copragri in the amount of USD $223,593.80. Copragri denies liability, contractual or otherwise, for any Vessel delays at the discharge port. As aforesaid, all contractual rights and obligations between Copragri on the one hand and Agribusiness on the other hand are controlled by the sales contracts dated August 5, 2013.

Almost exactly six years after discharge completed, Agribusiness illegally commenced SMA arbitration on September 7, 2019 by nominating its purported arbitrator named Mr.

Abdellatif Mellouki.  Agribusiness further alleges that when Copragri did not appoint an SMA arbitrator within 20 days (in the circumstances Copragri was required to do no such thing), on November 15, 2019 it nominated a second arbitrator named Mr. Karim Medkouri.  Those two arbitrators nominated by Agribusiness then appointed a third named Mr. Issam Ennassiri, who is believed to have a relationship with Mr. Mellouki.

On October 25, 2019, the undersigned counsel for Copragri responded to the arbitration demand and first objected to Agribusiness as follows via email and courier:

Dear Sirs,

We represent Copragri S.A. ("Copragri"). We write in response to the Arbitration Demand of Agribusiness United DMCC dated October 7, 2019.

Copragri rejects Agribusiness United DMCC's arbitration demand as invalid and of no force and effect.

Contrary to the Arbitration Demand, the governing contract between Agribusiness United DMCC and Copragri is the corn purchase and sale contract number AUD 716, not the bill of lading upon which Agribusiness United DMCC has relied to demand arbitration.  Moreover, Agribusiness United DMCC is not even a party to the bill of lading and thus has no right to demand arbitration against Copragri thereunder.

Furthermore, the purchase contract between Agribusiness United DMCC and Copragri, Contract Number: AUD 716, provides for disputes to be submitted to GAFTA arbitration governed by English law.  Thus, Agribusiness United DMCC is/was required to pursue any claims against Copragri before a GAFTA arbitration panel, including any claims for demurrage – as specifically referenced in Contract Number: AUD 716.

Finally, under the GAFTA arbitration rules, Agribusiness United DMCC was required to commence arbitration "not later than one year after . . . the date of completion of final discharge of the ship at port of destination."  Thus, any claim by Agribusiness United DMCC was time barred almost 5 years ago.

For the foregoing reasons, among others, Agribusiness United DMCC's Arbitration Demand is null, void and of no legal effect.

This letter is written entirely without prejudice to Copragri's rights, claims and defenses, all of which are reserved.

*See Copragri's Objection dated 10/25/19 attached as Ex. 6.*

Subsequently, on December 10, 2019 Copragri submitted its second objection to Agribusiness responding to the arbitration as follows:

Dear Sirs,

Further to our letter dated October 25, 2019, you will recall that we represent Copragri S.A. ("Copragri"). The purpose of this letter is to reiterate Copragri's continued and ongoing objection to the arbitration Agribusiness United DMCC has purported to commence in New York, purportedly pursuant to an arbitration clause in bills of lading.

Agribusiness United DMCC's arbitration demand is invalid and of no force and effect because, as we have previously advised you, the governing contract between Agribusiness United DMCC and Copragri is the corn purchase and sale contract number AUD 716, not any bill(s) of lading. As we also advised you, Agribusiness United DMCC is not even a party to any bill(s) of lading covering the shipment of the cargo and, thus, has no right to demand arbitration against Copragri thereunder. Furthermore, the purchase contract between Agribusiness United DMCC and Copragri, Contract Number: AUD 716, provides for disputes to be submitted to GAFTA arbitration governed by English law. Agribusiness has not disputed these facts.

Thus, the fact that Agribusiness United DMCC is/was required to pursue any claims against Copragri before a GAFTA arbitration panel, including any claims for demurrage – as specifically referenced in Contract Number: AUD 716, remains indisputable and unchallenged by Agribusiness United DMCC. As well, it remains indisputable and unchallenged that under the GAFTA arbitration rules, Agribusiness United DMCC was required to commence arbitration "not later than one year after . . . the date of completion of final discharge of the ship at port of destination." Accordingly, any claim by Agribusiness United DMCC was time barred almost 5 years ago – as we have previously advised you and which Agribusiness United DMCC has failed to dispute.

For the foregoing reasons, among others, Agribusiness United DMCC's Arbitration Demand is null, void and of no legal effect and Copragri therefore demands that Agribusiness United DMCC immediately terminate the arbitration in New York that it has wrongly commenced.

This letter is written entirely without prejudice to Copragri's rights, claims and defenses, all of which are reserved.

*See Copragri's Objection dated 12/10/19 attached as Ex. 7.*

Thereafter, on January 21, 2020, Copragri directed its objection to the two supposed new arbitrators whom Agribusiness had appointed, namely Mr. Mellouki and Mr. Medkouri, with a copy to Agribusiness which stated:

Dear Sirs,

We have received a copy of a December 10, 2019 email from the representative of Agribusiness United DMCC ("Agribusiness") relating to an arbitration it alleges to have commenced against our client, Copragri S.A. ("Copragri"). In that email, Agribusiness's representative asserts that the Copragri has denied that the we represent it in relation to the subject arbitration. That is untrue. We have at all times represented Copragri in relation to the subject arbitration, which at all times Copragri has consistently maintained has been unlawfully commenced.

The purpose of this letter is to again reiterate Copragri's continued and ongoing objection to the arbitration.

Copragri is not a party to any contract with Agribusiness providing for arbitration of any disputes in New York. Moreover, Copragri has never agreed to arbitrate any disputes with Agribusiness in New York. Thus, there is no legal or contractual basis for the arbitration Agribusiness has wrongfully commenced.

As we have outlined in our previous correspondence, Agribusiness United DMCC and Copragri are parties to Contract Number: AUD 716, which clearly and unequivocally provides for disputes to be submitted to GAFTA arbitration, governed by English law. Agribusiness has not never disputed these facts. Agribusiness has never commenced arbitration before GAFTA.

As set out in our two accompanying, prior objection letters, the arbitration Agribusiness has sought to commence in New York is null, void and of no legal effect. Agribusiness's purported appointment of Mr. Karim Medkouri on Copragri's behalf is therefore rejected.

For all the foregoing reasons, there is no arbitral jurisdiction over Copragri in New York and no action taken by, or order, directive or award issued by any arbitrator appointed by Agribusiness is effective as to Copragri.

This letter is written entirely without prejudice to Copragri's rights, claims and defenses, all of which are reserved.

*See Copragri's Objection dated 1/21/20 attached as Ex. 8.*

On or about January 28, 2020, Agribusiness apparently submitted a perfunctory 6-page "Statement of Facts" which failed to address the issue of arbitrability, and failed to disclose that it had committed itself to GAFTA arbitration with Copragri.  Its submission did not contain a single legal citation, but did include ten exhibits, and a draft arbitration award for the three arbitrators to rubber-stamp, which was inappropriate in and of itself.

Next, on February 7, 2020, Copragri again directed its objection to the three supposed arbitrators, with a copy to Agribusiness which stated:

Dear Sirs,

Further to our three previous notices objection to the purported arbitration commenced by the purported Claimant, Agribusiness United DMCC ("Agribusiness"), we represent the purported respondent, Copragri S.A. ("Copragri").

Notwithstanding our representations that we represent Copragri, and our written objections to the illegality of the purported arbitration, the three purported arbitrators appear intent on continuing with the arbitration.  In doing so, the three arbitrators have – apparently – continued contact with our client, Copragri, without copying messages and notices to us.  Equally, it appears that three arbitrators are illegally communicating on an ex parte basis with representatives of the purported claimant, Agribusiness.  While the purported arbitration is patently illegal, arbitrators have a fundamental obligation to provide notice to each of the parties – and their legal representatives - of all matters relating to any arbitration.  The arbitrators have already breached this fundamental obligation.

Furthermore, the attached document is defective in numerous ways as it fails to provide the information required of any arbitrator disclosure – and more glaringly it is entitled "Charterers' Statement of Fact and Claim" – which renders it ambiguous at best.  More disturbingly, it appears to have been prepared by Agribusiness's representatives, and not the arbitrators themselves, which provides further evidence of illegal ex parte communications between the arbitrators and one of the parties.  Additionally, there appears to be a relationship between the purported chairperson, Mr. Ennassiri and one of the other purported arbitrators appointed by Agribusiness, Mr. Mellouki, which raises further objections as to the impartiality of the purported panel.

The "disclosures" by each of the purported arbitrators of wholly inadequate and fail to comply with Section 9 of the Arbitration Rules of the Society of Maritime Arbitrators of New York, which govern the purported arbitration.  Each of the disclosures lacks the information specifically required under Section 9.

Accordingly, and with full reservation of all of its rights, claims, defenses and remedies to the legality of the purported arbitration, Copragri hereby challenges each of the arbitrators on grounds that (a) impermissible conflicts of interest exist between and among the purported arbitrators; (b) impermissible conflicts of interest exist between the purported claimant, Agribusiness, and each of the purported arbitrators; and (c) each of the purported arbitrators has participated in impermissible ex parte communications with the purported claimant, Agribusiness.

Please be further advised that we are seeking Copragri's instructions to commence an action in the New York courts to enjoin the arbitration. In relation to that action, we will request that the court require Agribusiness's representatives, as well as the three purported arbitrators, to appear before the New York court and to respond to the action seeking an injunction.

Copragri will seek recovery of all of its legal fees and costs incurred in addressing the illegal arbitration.

This letter is written entirely without prejudice to Copragri's rights, claims and defenses, all of which are reserved.

*See Copragri's Objection dated 2/7/20 attached as Ex. 9.*

> Thereafter, on February 7, 2020, Copragri once again objected to the three

purported arbitrators, with a copy to Agribusiness, as follows:

Dear Sirs,

Further to our four previous notices objection to the purported arbitration commenced by the purported Claimant, Agribusiness United DMCC ("Agribusiness"), we represent the purported respondent, Copragri S.A. ("Copragri").

In addition to our four prior letters objecting to the unlawful and invalid nature of the purported arbitration proceeding commenced by Agribusiness, we understand that Agribusiness has now served a supposed submission consisting of "Plaintiffs' Statement of Facts and Claim and 10 Exhibits, a signed "verification letter" and "proposed award." Setting aside the fact that the arbitration proceeding is invalid and unlawful ab initio, Agribusiness's submission utterly fails to comply with the governing arbitration rules. Most disturbingly, Agribusiness has written a proposed arbitration award, which itself is unethical and unlawful and in violation of the governing arbitration rules. Thus, on these grounds, in addition to those set forth in its prior objections, Copragri further objects to the arbitration proceeding as violating the substantive and procedural due process rights of Copragri.

As set forth in Copragri's fourth objection to the purported arbitration, we will be applying commencing a court action in New York to enjoin the purported

arbitration proceeding and will seek to recover all costs and legal fees incurred by Copragri in relation to the invalid and unlawful arbitration. Accordingly, you are respectfully notified to immediately suspend the arbitration and refrain from any further actions in violation of Copragri's rights.

This letter is written entirely without prejudice to Copragri's rights, claims and defenses, all of which are reserved.

*See Copragri's Further Objection dated 2/7/20 attached as Ex. 10.*

Finally, the purported arbitrators made their Final Award on June 15, 2020. The Final Award, which totaled three pages, failed to provide a single legal citation and failed to contain any analysis whatsoever. It neither addressed, nor did it mention, that Copragri had objected on the basis *inter alia* that the sales contracts required GAFTA arbitration and the application of English law rather than SMA arbitration and the application of U.S. Law. In fact, the Final Award never once even mentioned the sales contracts, which were the only agreements that ever existed between Agribusiness and Copragri.

## ARGUMENT

### POINT I

### STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") provides a "streamlined" process for a party seeking "a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." Hall Street Assocs. L.L.C. v. Mattel, Inc., 552 U.S. 576, 582, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008). "[D]istrict courts should . . . treat a petitioner's application to confirm or vacate an arbitral award as akin to a motion for summary judgment." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 136 (2d Cir.2011). "A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2006).

The FAA enumerates four instances in which a court may vacate an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.

9 U.S.C. § 10(a).

An arbitrator's award is to be afforded significant deference by a court on review. See Wackenhut Corp. v. Amalgamated Local 515, 126 F.3d 29, 31 (2d Cir.1997). "[A]n arbitration award must be upheld when the arbitrator 'offer[s] even a barely colorable justification for the outcome reached. [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision. If, however, the arbitrator exceeds his powers, the court may vacate the award. 9 U.S.C. § 10(a)(4)." See 187 Concourse Associates v. Fishman, 399 F.3d 524, 526–27 (2d Cir. 2005).

Most importantly in this case, it is the duty of the reviewing court to "determine first whether the arbitrator acted within the scope of his authority, and second whether the award draws its essence from the agreement or is merely an example of the arbitrator's own brand of justice." IDS Life Ins. Co. v. Royal All. Assoc's, Inc., 266 F.3d 645, 650 (7th Cir. 2001) citing United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36, 108 S.Ct. 364, 369–70, 98 L.Ed.2d 286 (1987); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960); Radio & Tel. Broadcast Engineers Union, Local, 1212 v. WPIX, Inc., 716 F.Supp. 777, 780 (S.D.N.Y.1989), aff'd, 895 F.2d 1411 (2d Cir.1989).

As the U.S. Supreme Court has repeatedly held, the FAA's "central purpose" is "to ensure 'that private agreements to arbitrate are enforced according to their terms.'" Mastrobuono v. Shearson Lehman Hutton, Inc. 514 U.S. 52, 53-54 (1995). Although judicial review of an arbitral award under the FAA is ordinarily deferential, courts have clear authority in cases like this to vacate an arbitral award. See, e.g., Totem Marine Tug & Barge, Inc. v. N. Am. Towing Inc., 607 F. 2d 649, 651 (5th Cir. 1979) ("[a]rbitration is contractual and arbitrators derive their authority from the scope of the contractual agreement"); see also Katz v. Feinberg, 290 F. 3d 95 (2d Cir. 2002); Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 90 (2d Cir. 2008) (reversing district court holding that arbitrators' award was made in 'manifest disregard' of law); rev'd on other grounds 130 S. Ct. 1758 (2010) (holding that panel exceeded its powers by imposing its own policy choice).

An arbitration clause is binding on those parties which have entered into a contractual agreement to submit to arbitration. See Contec Corp. v. Remote Solution Co., 398 F.3d 205, 211 (2d Cir. 2005); Motorola Credit Corp. v. Uzan, 388 F.3d 39, 52 (2d Cir. 2004). As taught by the U.S. Supreme Court, "the first principle that underscores all of [its] arbitration decisions is that arbitration is strictly a matter of consent, and thus is a way to resolve those disputes — but only those disputes — that the parties have agreed to submit to arbitration." Granite Rock Co. v. International Bhd. of Teamsters, 561 U.S. 287, 299, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010). Thus, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." Id.; see also, Volt Information Sciences v. Board of Trustees, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989) (the Supreme Court has recognized that the FAA does not require parties to arbitrate when they have not agreed to do so).

In this case, there are critically important threshold jurisdictional questions of whether the arbitration was: (1) conducted pursuant to the parties' arbitration clause in their governing contract, (2) conducted in the correct forum as agreed in their governing contract, and (3) decided pursuant to the correct law expressly agreed in their contract.  The parties' agreement is clear on its face: the August 5, 2013 governing sales contracts provide in unambiguous language printed in all caps that "ALL TERMS AND CONDITIONS NOT IN CONTRADICTION WITH ETH ABOVE AS PER GAFTA 100" and "ARBITRATION AS PER GAFTA 125.  The forms GAFTA 100 and GAFTA 125 are attached as Exhibits 4 and 5 respectively.  GAFTA contracts provide for English law (GAFTA 100, Section 27) as the applicable law, and English courts have jurisdiction over the tribunal's awards.

Motivated by trying to avoid the GAFTA one-year time bar, Agribusiness ignored its contract with Copragri and the governing GAFTA arbitration clause, and proceeded to commence arbitration pursuant to the SMA Rules under U.S. Law.  Put simply, Copragri never agreed to SMA arbitration in New York, and never agreed to the application of U.S. Law, and to be clear, the parties' contract called for GAFTA arbitration, not SMA arbitration.  The Court may quickly confirm this for itself by reviewing page 3 of each sales contract attached as Exhibits 2 and 3.

In this context, therefore, to resolve the threshold question of arbitrability, the court should determine whether the parties agreed to arbitrate the claim and the boundaries of their arbitration agreement.  "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary . . . principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942-944 (1995).  As the Supreme Court held in First Options of Chicago, the answer to the narrow question whether the arbitrators or the courts have the primary power to decide whether the parties agreed to arbitrate a dispute's merits is fairly simple.  Just as the arbitrability of the merits of a dispute depends upon whether the parties

agreed to arbitrate that dispute, so too the question "who has the primary power to decide arbitrability" turns upon whether the parties agreed to submit that question to arbitration.  Id.  If so, then the court should defer to the arbitrator's arbitrability determination.  Id.  If not, then the court should decide the question independently.  These two answers flow inexorably from the fact that arbitration is simply a matter of contract between the parties.  Id.

New York courts — like the Supreme Court and Second Circuit in the FAA context — follow the rule that unless the agreement to arbitrate expressly and unequivocally encompasses the subject matter of the particular dispute, a party cannot be compelled to forego the right to seek judicial relief and instead submit to arbitration.  See, e.g., Pictet Funds Eur. S.A. v. Emerging Managers Group, L.P., 2014 U.S. Dist. LEXIS 166477, *34-35 (S.D.N.Y. 2014) citing Computer Assocs. Int'l., Inc. v. Com-Tech Assocs., 239 A.D.2d 379, 380-81, 658 N.Y.S.2d 322 (2d Dep't 1997).  "Here, a review of the agreement shows that [petitioner] did not agree to arbitrate the claim."  Pictet Funds Eur. S.A, 2014 U.S. Dist. LEXIS 166477 at *35; Abm Indus. Grp., LLC v. Int'l Union of Operating Eng'rs, Local 30A, 30B, AFL-CIO, 2019 U.S. Dist. LEXIS 130311, *9 (S.D.N.Y. 2019)("The arbitrator exceeded her authority by issuing an award against [persons] who were not parties to the arbitration agreement").

"[A]rbitration is a matter of contract and ... parties cannot be compelled to arbitrate issues they have not specifically agreed to submit to arbitration."  Shaw Grp. Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003); see also,  AGCS Marine Ins. Co. v. Hymel & Assocs., LLC, 2017 U.S. Dist. LEXIS 97166, *11 (S.D.N.Y 2017)(court declined to compel arbitration because respondent did not agree to arbitrate and because petitioner failed to demonstrate a valid basis to nevertheless compel arbitration).  "Absent an express agreement to arbitrate, [the Second Circuit] has recognized only 'limited theories upon which it is willing to enforce an arbitration agreement against a nonsignatory.'"  Merrill Lynch Inv. Mgrs. v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir.

2003) (quoting Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 780 (2d Cir. 1995)).

"There are five such theories: '1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel.'" Id. (quoting Thomson, 64 F.3d at 776).

As the court  in City of Almaty v. Sater, 2019 U.S. Dist. LEXIS 211235, *23-24 (S.D.N.Y 2019) recently stated:

> Arbitration is a matter of contract. See, e.g., Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010); Kwatinetz, 356 F. Supp. 3d at 347. The court has no authority to mandate arbitration when the parties have not agreed to arbitrate. Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 131-32 (2d Cir. 2003) (citing United Steelworkers of Am. V. Warrior Gulf Navigation Co., 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)); see AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648-49, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) ("[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration"); United Steelworkers, 363 U.S. at 581 (noting that an arbitrator "has no general charter to administer justice for a community which transcends the parties" but rather is "part of a system of self-government created by and confined to the parties" (citation omitted)). Thus, a court should not construe an arbitration agreement "so broadly [] as to encompass claims and parties that were not intended by the original contract." Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995); accord Kwatinetz, 356 F. Supp. 3d at 347; see also Manigault v. Macy's East, LLC, 318 F. App'x 6, 7-8 (2d Cir. 2009) (summary order) ("It is 'well settled' under New York law that arbitration will not be compelled absent the parties' 'clear, explicit and unequivocal agreement to arbitrate.'" (quoting Fiveco, Inc. v. Haber, 11 N.Y.3d 140, 144, 893 N.E.2d 807, 863 N.Y.S.2d 391 (2008))). [Here], Sater is not a party to the CAA and, thus, there is no agreement to arbitrate between and among Sater and the Plaintiffs.

Id.

Similarly, in Maryland Casualty Co. v. Realty Advisory Bd. On Labor Relations, 107 F.3d 979, 984 (2d Cir. 1997), the Second Circuit Court of Appeals determined that the claims at issue were not arbitrable in the situation where certain employees were not covered by the arbitration agreement, and that forcing a party to arbitrate non-arbitrable issues results in irreparable harm. Id.  ("[T]he district court did not err in concluding that the present dispute was not arbitrable as a result of the six Partners's employees not being covered by the collective bargaining agreement");

see also Pictet Funds (Eur.) S.A. v. Emerging Managers Grp., L.P., No. 14-CV-6854 (SAS), 2014 U.S. Dist. LEXIS 166477, *39 (S.D.N.Y. Dec. 1, 2014)("In the context of arbitration, it is generally held that a party suffers irreparable harm when it is 'forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable.' A similar principle applies to the hardship prong. Here, plaintiffs both foreign entities did not agree to arbitrate the Claim, and I find that these two factors are satisfied.").

　　　　In situations such as the one presented in this case, it is the court, not the arbitration panel, who must decide the issue of arbitrability.  Shaw Group, Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120-121 (2d Cir. 2003).  An arbitration provision that is part of a contract affecting interstate and international commerce is is governed by the Federal Arbitration Act ("FAA"). See 9 U.S.C. §§ 1, 2 (1999); Allied-Bruce Terminix Companies v. Dobson, 513 U.S. 265, 273-81, 130 L. Ed. 2d 753, 115 S. Ct. 834 (1995); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983); PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996).  Courts are mindful that "arbitration is a matter of contract," AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986), and that parties cannot be compelled to arbitrate issues that they have not specifically agreed to submit to arbitration, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 945, 131 L. Ed. 2d 985, 115 S. Ct. 1920 (1995).

　　　　In questions of arbitrability, the law then reverses the presumption to favor judicial rather than arbitral resolution. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. at 944-45. Thus, as federal case law makes plain, "the issue of arbitrability may only be referred to the arbitrator if "there is 'clear and unmistakable' evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator.'" Bell v. Cendant Corp., 293 F.3d at 566.

The decisions in <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis</u>, 903 F.2d 109 (2d Cir. 1990), <u>PaineWebber, Inc. v. Rutherford</u>, 903 F.2d 106 (2d Cir. 1990); and <u>Roney & Co. v. Goren</u>, 875 F.2d 1218 (6th Cir. 1989) are instructive and stand for the proposition that where a party does not agree to arbitrate before a particular forum, that forum does not have jurisdiction. More specifically, these three cases hold that an agreement to arbitrate before a particular forum is as integral a term of a contract as any other, which courts must enforce.

> When Congress enacted the Arbitration Act making arbitration agreements enforceable, it surely did not intend that the parties be able to disregard selected contractual obligations willy-nilly in order to choose an arbitral forum more convenient or more suited to a party's particular needs.

<u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis</u>, 903 F.2d at 113 (2d. Cir. 1990) <u>citing Roney & Co. v. Goren</u>, 875 F.2d at 1223.

At issue in this petition are two alternative bases for vacatur under circumstances where the parties' contract contained a one-year statute of limitations under GAFTA 100 terms, and mandated GAFTA arbitration under English Law, and whereas Agribusiness constituted an arbitration more than one year after the alleged breach, and pursuant to a bill of lading to which Copragri was never a party, constituted an SMA arbitration pursuant to U.S. Law. That is, vacatur is appropriate on the alternative grounds that: (1) the arbitrators exceeded their powers, and (2) the arbitrators acted in manifest disregard of the law.

## POINT II

### THE FINAL AWARD SHOULD BE VACATED BECAUSE THE ARBITRATORS EXCEEDED THEIR POWERS AND/OR IMPERFECTLY EXECUTED THEM

Section 10(a)(4) of the FAA provides for vacatur of an arbitral award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award

upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). "Vacatur is appropriate under 9 U.S.C. § 10 (a)(4) when an arbitrator's decision exceeds his powers." Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 754 F.3d 109, 112-13 (2d Cir. 2014). "The Second Circuit has instructed that the 'crux of the excess-of-powers standard is whether the arbitrator's award draws its essence' from the agreement." Incredible Foods Group, LLC v. Unifoods, S.A. de C.V., 2015 U.S. Dist. LEXIS 131130 at *13 (E.D.N.Y. September 29, 2015) citing Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 754 F.3d at 112-113. "Where . . . the arbitral decision lacks any contractual basis for its determination such that the decision could not have been based on a determination regarding the parties' intent, a court may vacate the arbitrator's decision." Incredible Foods Group, 2015 U.S. Dist. LEXIS 131130 at * 14 (internal citations omitted.) Moreover, an arbitration panel is not at liberty to re-write the agreement between the parties. Torrington Co. v. Metal Prod. Workers Local 1645, 362 F.2d 677, 682 (2d Cir. 1986)(arbitrator cannot re-write a new agreement for the parties).

An arbitration panel also exceeds its authority when it issues an arbitral award that "contradicts an express and unambiguous term of the contract." Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 222 (2d Cir. 2002). The Supreme Court, in Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 672, 130 S.Ct. 1758, 1767, 176 L. Ed. 2d 605, 616 (2010), confirmed the applicability of this principle to petitions for vacatur under the FAA, stating that "[w]hen [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' his decision may be unenforceable."

With respect to the fourth enumerated FAA ground for vacatur, i.e. where the arbitrators exceed their powers, in Stolt-Nielsen S. A., 559 U.S. at 669, the Supreme Court acknowledged in the context of a maritime arbitration that 9 U.S.C. § 10(a)(4) authorizes a district court to "make an order vacating the award upon the application of any party to the arbitration . . . where the

arbitrators exceeded their powers".  The inquiry of whether an arbitrator has exceeded his powers "focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue."  T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 346 (2d Cir. 2010) (quoting Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 220 (2d Cir. 2002)); DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 824 (2d Cir. 1997)(same).  The FAA permits vacatur of an arbitral award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4); accord Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255, 262 (2d Cir. 2003).

As applied here, the SMA arbitrators exceeded their powers in circumstances where even a cursory review of the sales contracts between Agribusiness and Copragri conclusively demonstrates that they agreed to submit disputes to GAFTA arbitration, not the SMA.  For the reasons explained in the Facts section supra, the arbitrators exceeded their authority, and they did so willingly.  It is the only reasonable explanation for why the panel failed to mention, much less failed to analyze, the governing sales contracts between the parties that expressly applied GAFTA 100 and GAFTA 125 terms.  On this basis, the Final Award should be vacated under Section 10(a)(4) of the FAA.

## POINT III

### THE FINAL AWARD SHOULD BE VACATED BECAUSE THE ARBITRATORS MANIFESTLY DISREGARDED THE LAW

In the Second Circuit, vacatur of an arbitration award is appropriate not only upon a finding a violation of one of the four statutory bases enumerated in the FAA, but also vacatur is appropriate

when the court finds the arbitration panel has acted in manifest disregard of the law.  In addition

to the statutory grounds set forth in the FAA, the Second Circuit also recognizes that a court may

vacate an arbitration award rendered in "manifest disregard" of the law.  To constitute manifest

disregard of the law, the court must find that "the arbitrator knew of the relevant [legal] principle,

appreciated that this principle controlled the outcome of the dispute case, and nonetheless willfully

flouted the governing law by refusing to apply it." Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.,

548 F.3d 85, 95 (2d Cir. 2008*) rev'd on other grounds*, 559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed.

2d 605 (2010).  Awards are vacated on grounds of manifest disregard of the law only in those

exceedingly rare instances where some egregious impropriety on the part of the arbitrators is

apparent.  Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388-389 (2d

Cir. 2003); see also, Porzig V. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 139 (2d

Cir. 2007); Zurich Am. Ins. Co. v. Team Tankers A.S., 811 F.3d 584, 588 (2d Cir. 2016); Hagan

v. Katz Communs., Inc., 200 F. Supp. 3d 435, 442-443 (S.D.N.Y. 2016); Caro v. Fid. Brokerage

Servs., LLC, 2014 U.S. Dist. LEXIS 110405, *11-12 (D. Conn. 2014).

Additionally, as held by Judge Haight in Caro v. Fid. Brokerage Servs., LLC, 2014 U.S.

Dist. LEXIS 110405 (D. Conn. 2014), the Second Circuit recognizes that a court may vacate an

arbitration award rendered in "manifest disregard" of the law.  Id. at *11-12 citing Duferco Int'l

Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003). To constitute

manifest disregard of the law, the court must find that "the arbitrator knew of the relevant [legal]

principle, appreciated that this principle controlled the outcome of the dispute case, and

nonetheless willfully flouted the governing law by refusing to apply it."  Id. citing Stolt-Nielsen

SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 95 (2d Cir. 2008) *rev'd on other grounds*, 559 U.S.

662, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010). Awards are vacated on grounds of manifest

disregard of the law only in those "exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent." Id; Duferco Int'l Steel Trading, 333 F.3d at 389.

As applied here, and as outlined above, the Arbitrators' Final Award egregiously ignored the issue of arbitrability notwithstanding Copragri's five separate written objections providing proof that the parties' sales contracts were subject to GAFTA arbitration and governed by English law, and as such were long-ago time-barred. They likewise ignored Copragri's repeated objections that it never agreed to SMA arbitration or New York law. This is not a situation where the panel struggled to analyze a difficult legal issue and got it wrong; to the contrary, the panel attempted to sweep the most important issue presented under the rug. In this way, if the court was only to read the Final Award, it would never know that the issue was put squarely before the panel by Copragri's counsel, nor would it know that the sales contracts were subject to a one-year time bar under the governing GAFTA rules. In this case, the panel's manifest disregard for the terms of the sales contracts, including its lengthy arbitration provisions, amounts to a manifest disregard of the law. The Final Award should be vacated.

## **CONCLUSION**

For the foregoing reasons, Copragri respectfully requests that the Court grant the following relief:

(i)    an Order vacating the Award pursuant to 9 USC § 10(a)(4);

(ii)    an Order vacating the Award on the basis of manifest disregard of the law; and

(iii)    all such other relief, whether at law or in equity, as this Court may determine to be just and equitable under the circumstances.

22

Dated: July 16, 2020

Respectfully submitted,

The Petitioner,
COPRAGRI S.A.

By:_____
    Patrick F. Lennon
    Charles E. Murphy
    LENNON, MURPHY & PHILLIPS, LLC
    The Graybar Building
    420 Lexington Ave., Suite 300
    New York, NY 10170
    Tel:    (212) 490-6050
    Fax:    (212) 490-6070
    Email:  plennon@lmplaw.net
            cmurphy@lmplaw.net